310 F.2d 141
 Jamelle RACKLEY, a minor by her Mother and next friend, Gloria Rackley, and Gloria Rackley, Appellants,
v.
BOARD OF TRUSTEES OF the ORANGEBURG REGIONAL HOSPITAL, a body public, and H. F. Mabry, Director of the Orangeburg Regional Hospital, Appellees.
 No. 8731.
 United States Court of Appeals Fourth Circuit.
 Argued September 24, 1962.
 Decided November 9, 1962.
 
 Lincoln C. Jenkins, Jr., Columbia, S. C., and James M. Nabrit, III, New York City (Jack Greenberg, Michael Meltsner, New York City, and Matthew J. Perry, Columbia, S. C., on brief), for appellants.
 David W. Robinson, Columbia, S. C. (Charlton B. Horger, Orangeburg, S. C., on brief), for appellees.
 Before BOREMAN, BRYAN and BELL, Circuit Judges.
 ALBERT V. BRYAN, Circuit Judge.
 
 
 1
 A preliminary injunction, under the civil rights statutes*, was denied the appellant Negro citizens, Jamelle and Gloria Rackley, in their suit to restrain permanently the Orangeburg Regional Hospital and its Director, appellees, from maintaining distinct facilities for white and colored in the Hospital. The principal question is whether they were entitled to an injunction pendente lite.
 
 
 2
 The hospital is a county institution, and the appellants residents, of Orangeburg, South Carolina. Use of a waiting room was the only service of the hospital in issue at the hearing, but the complaint was directed to all the facilities. Its averments included, specifically, "separate ward and room facilities for patients" (paragraph 7). There was also an allegation to the effect that the United States had contributed substantial sums for the expansion of the hospital (paragraph 6). That part of 7 just quoted and all of paragraph 6 were stricken by the Court on the appellees' motion, the first as untouched by the evidence and the latter as immaterial.
 
 
 3
 The case arose in this way. Jamelle Rackley, the 14-year old daughter of Gloria Rackley, was hurt in a playground accident on October 12, 1961. Taken to the hospital she was treated for a dislocated bone in her finger. Her mother arrived at the emergency room just after the X-ray examination was finished. Told that her daughter would be given anesthesia and taken to surgery for treatment, she first waited in the emergency room and then was directed to a waiting room. Without explanation to her she subsequently was shown to another waiting room. Presumably it was the one generally used by the colored people. She did not enter the second room, but promptly returned and took her seat in the first. The Chief of Police and another officer, who apparently had meanwhile been called by the hospital, appeared and told her she would have to leave that room or be arrested. She then stepped out into the corridor, where in 10 or 15 minutes she met her daughter and left without further incident.
 
 
 4
 Two weeks later, October 26, mother and daughter returned. The finger cast was removed in the presence of the mother and Jamelle taken to X-ray. Her mother followed to the door of the X-ray room, and then entered the waiting room where she had stayed on her initial visit. A doctor came to the door, said her daughter was alone in X-ray, and requested her to join the girl. She answered she would wait where she was. Even when he stated that her daughter needed her, she still declined to move. Thereafter the doctor came back, told her Jamelle's treatment had been completed, that she was out of X-ray and the mother could go to her. To this she replied that her daughter would be able to find her.
 
 
 5
 The mother — joined by her daughter — continued to sit in the waiting room. The Hospital Director then asked her if they had "finished with your daughter". The mother said they had. He then inquired why she did not go; she responded she was waiting for her car. Though it was in the shop, she said, it was coming for her. On her refusal to go out on the street and wait, as he requested, a police officer in plain clothes appeared and placed her under arrest for "disturbing the business of the hospital".
 
 
 6
 Reversal for refusal of the interlocutory injunction is not justified. The ruling was well within the discretion of the trial judge and he did not abuse his power. Deckert v. Independence Shares Corp., 311 U.S. 282, 290, 61 S.Ct. 229, 234, 85 L.Ed. 189 (1940); Calagaz v. DeFries, 303 F.2d 588, 589-90 (5th Cir.1962); Shuttlesworth v. Conner, 291 F.2d 217 (5th Cir.1961); Progress Dev. Corp. v. Mitchell, 286 F.2d 222, 229 (7th Cir.1961). No immediate and irreparable injury faced the appellants. They themselves delayed their suit for five months, so apparently there was no emergency.
 
 
 7
 Furthermore, the Rackleys' cause was presented too narrowly. It dealt only with the use of one room, as we have observed, and in regard solely to one and the same non-patient. Racial segregation throughout the hospital was not admitted or proved. Neither segregation nor any other form of discrimination was shown in the medical and surgical aid given the appellant patient. Constitutional deprivations ought not to be adjudicated preliminarily, piecemeal or on a record so meagre. It could even lead to vexation. Judgment should, and can here without hurt, await a full-dress hearing of the controversial issue in its entirety, that is as to the overall administration of the hospital in respect to individual and personal rights. This can readily be done after remand, on the trial of the prayer for a permanent injunction.
 
 
 8
 Our decision in Henry v. Greenville Airport Comm'n., 284 F.2d 631 (4th Cir. 1960) does not dictate a different answer here. There the discrimination was a potential, continual interference in the use of a public, interstate transportation conduit. Many colored airline passengers from diverse sections of the nation could be expected to frequent this area constantly. Obviously, the circumstances demanded action at once. Consequently, the case tendered an urgent issue, and did so quite fully and completely, not in fragments as here.
 
 
 9
 But we do not uphold the striking of the two paragraphs of the complaint. These averments should remain for consideration at the final hearing. See Augustus v. Board of Pub. Instruction, 306 F.2d 862, 868 (5th Cir.1962). In respect to paragraph 6 — the contribution of Federal funds to the hospital — from the record before the District Court it did not conclusively appear that this circumstance was not germane to the claimants' case. Accordingly that allegation should be heard. In regard to the stricken part of paragraph 7 — "separate ward and room facilities for patients" — it is enough to note that these are items of general hospital operation; the complainants should not be required to prosecute a separate suit for each activity or department of the hospital.
 
 
 10
 The appellants allege they sue for themselves as well as in behalf of others similarly circumstanced. Validity of the suit as a class action is denied by the hospital and Director. A class action, the trial court ruled, was not disclosed by the complaint and evidence. However, on trial of the permanent injunction we think this issue too should be reopened and reheard.
 
 
 11
 The decree of the District Court will be affirmed in its denial of a preliminary injunction, but reversed insofar as it strikes from the complaint the allegations of paragraphs 6 and 7. The action will be remanded to the District Court for proceedings not inconsistent with this opinion.
 
 
 12
 Affirmed in part; reversed in part; and remanded.
 
 
 
 Notes:
 
 
 *
 28 U.S.C. § 1343(3); 42 U.S.C. §§ 1983, 1981