Janelle RACKLEY, a minor, by her mother and next friend, Gloria Rackley, and Gloria Rackley, Plaintiffs,

v.

BOARD OF TRUSTEES OF the ORANGEBURG REGIONAL HOSPITAL, a body public, and H. F. Mabry, Director of the Orangeburg Regional Hospital, Defendants.

Civ. A. No. AC–887.

United States District Court
E. D. South Carolina,
Columbia Division.

Feb. 17, 1965.

See also, D.C., 35 F.R.D. 516.

Matthew J. Perry, Lincoln C. Jenkins, Jr., Columbia, S. C., Jack Greenberg, James M. Nabritt, III, Michael Meltsner, New York City for plaintiffs.

Charlton B. Horger, Orangeburg, S. C., and David W. Robinson, Columbia, S. C., for defendants.

ROBERT W. HEMPHILL, Chief Judge.

Class action[1] by Negro plaintiffs to enjoin the Director and Board of Trustees of Orangeburg Regional Hospital "from continuing to enforce the policy, practice, custom, and usage of maintaining and operating segregated hospital facilities on the basis of race."

Plaintiffs, who were not inpatients of the defendant hospital when the 1961 incidents occurred and which precipitated this controversy originally sought a preliminary and permanent injunction to enjoin alleged segregation procedures complained of which allegedly existed throughout the hospital.[2] The District Court, upon motion, struck so much of plaintiffs' complaint as referred to "separate ward and room facilities for patients" on the basis that there was no contention that either plaintiff had sought such facility "or that there was any need for such facilities in this case." The Circuit Court of Appeals, in reversing, stated that "the complainants

[1.] In accordance with Rule 23(a) (3) Fed. Rules Civ.Proc.

[2.] The infant plaintiff had received a hand injury in school and was accorded satisfactory treatment in the emergency room; she had no need to be placed in

a room. The "incidents" revolved around the infant plaintiff's mother's use of a "white" waiting room. See recitation of facts reported in Rackley v. Board of Trustees of Orangeburg Regional Hosp., 310 F.2d 141, 142 (4th Cir. 1962).

should not be required to prosecute a separate suit for each activity or department of the hospital." Rackley v. Board of Trustees of Orangeburg Regional Hospital, 310 F.2d 141, 143 (4th Cir.1962). Accordingly, the direction to this Court is to make a determination anent the alleged practices throughout the hospital because "[c]onstitutional deprivations ought not to be adjudicated * * * piecemeal * * *." Id. at 142.

The District Court struck paragraph 6 of the Complaint which made reference to the contribution of Federal funds to this county hospital. The Court of Appeals reinstated.

Also left for determination of this Court is the question of whether or not this is a valid class action.

## I.

Because of its jurisdictional overtones, and because it is a threshold consideration, the validity of this class action will first be discussed.

Certain admitted facts have occurred since the institution of suit in 1962 which defendants contend effectively bar the equitable relief sought. These facts have to do with the "changed residence" of plaintiffs.

Plaintiff Gloria Rackley is the wife of L. G. Rackley; infant plaintiff Jamelle Rackley his adopted daughter.

L. G. Rackley, husband and adoptive father, respectively, of plaintiffs, was not living in the Orangeburg area at the time the incident out of which this controversy arose occurred in 1961, was not living in Orangeburg when suit was filed in 1962—during the scholastic year 1961–62 he was taking a doctorate in Oklahoma—upon completion he obtained a teaching position in Florida, which he apparently still holds. He is not now, and has not, since this action was instituted, resided in Orangeburg, or in South Carolina.

The two plaintiffs now reside in Virginia, where Gloria Rackley has a teaching contract for the current school year. Minor plaintiff lives with her.

Defendants' contend that because no person or persons "similarly situated" have intervened as parties plaintiff, that this suit is to be considered as one by two non-residents only, contend that because the domicile of the wife and minor child is that of the husband, see Deese v. Hundley, 232 F.Supp. 848, 849 (W.D. S.C.1964); Hair v. Hair, 10 Rich.Eq. 163, 176 (S.C.1858), coupled with the actual residence of plaintiffs, they have no standing to sue for injunctive relief because the hospital was created "to provide hospital facilities for the residents of Orangeburg County."

Defendants, who admitted plaintiffs' residence as being Orangeburg County when the Answer was filed in 1962, have not sustained the burden of showing that the "residence" or "domicile" of plaintiffs has changed. They point out that "an injunction looks to the future," Douglas v. City of Jeannette, 319 U.S. 157, 165, 63 S.Ct. 877, 882, 87 L.Ed. 1324 and because plaintiffs are not now in "actual residence" in Orangeburg County, they feel they have no standing for equitable relief. Under the facts and circumstances here appearing, such position is untenable.

Initially there is no showing that plaintiffs have any intention of abandoning Orangeburg, S. C. as their domicile. True, the husband and adoptive father of plaintiffs now lives in Florida, and the plaintiffs are in Virginia. But where is there a showing on intention to change domicile? In order for a change of domicile to be effectuated, there must be a moving coupled with an intention to establish a new domicile. The old domicile must be abandoned without intent to return. 28 C.J.S. Domicile § 13a, pp. 30–32. And, a domicile that is established is not relinquished by a temporary absence, however long continued. 28 C.J.S. Domicile § 13b, p. 32.

The record before the Court shows that the time the instant suit was commenced, Mrs. Rackley was employed as a public school teacher in Orangeburg, S. C. In October 1963, she was dismiss-

ed from her teaching position because of her participation in certain public demonstrations in Orangeburg and Charleston, S. C., some of which resulted in her being arrested. Subsequently she commenced suit against the Trustees of Orangeburg School District No. 5, asserting that dismissal for the reasons stated violated the due process and equal protection clauses of the Fourteenth Amendment and seeking, among other things, reinstatement to her position as a public school teacher.[3]

Deposition testimony reveals that Mrs. Rackley has retained ownership of her home on Whittaker Parkway in Orangeburg.

■ Pendency of her suit for reinstatement as a public school teacher and her continued ownership of real estate in Orangeburg negatives any inference or conclusion that she has abandoned her residence in Orangeburg. 28 C.J.S. Domicile § 13b.

■ The fact that plaintiffs seek relief not only for themselves but for other persons similarly situated is of significance in determining their standing to maintain this action. McSwain v. Board of Education, 138 F.Supp. 570 (E.D.Tenn.1956); Potts v. Flax, 313 F.2d 284, 288, n. 4 (5th Cir.1963); 15 Am.Jur.2d Civil Rights § 75.

In McSwain, supra, the Court held that a class action to enjoin alleged denial of constitutional rights with regard to the public schools would not be rendered moot merely because the students who originally brought the class action were no longer enrolled in the schools.

Note also Henry v. Greenville Airport Commission, 284 F.2d 631 (4th Cir.1960) wherein the Court permitted a Negro from Michigan to bring a class action to enjoin the segregation of facilities at the Greenville, S. C. Airport.

There is no evidence but that plaintiffs expect to return to Orangeburg when Civil Action No. 8458 is disposed of; and there is every reasonable inference of such intent. See note 3, supra.

■ Defendants have admitted that the Orangeburg Regional Hospital is the only hospital in Orangeburg County. The racial policies of the defendants affect the entire population of that county. Negro citizens have a common interest in these policies, and under Rule 23(a)(3), plaintiffs are permitted to maintain this action on their own behalf and on behalf of all other Negroes in the county. Gantt v. Clemson College, 320 F.2d 611, 614 (4th Cir.1963), cert. den. 375 U.S. 814, 84 S.Ct. 46, 11 L.Ed.2d 49.

■ Accordingly, the Court finds that plaintiffs, as representatives in a class action within the meaning of Rule 23(a)(3) Fed.Rules Civ. Proc., have standing to seek injunctive relief.

## II

The next question goes to the heart of this controversy. Are plaintiffs entitled to a permanent injunction?

There is an overabundance of evidence to support plaintiffs' demands that a permanent injunction issue.

First of all, the testimony of the Administrator of defendant hospital shows on its face that the hospital practices a policy of segregating the races. The Administrator, Mr. Henry Filmore Mabry, was asked:

> "Q. I ask you, sir, are Negro patients ever assigned to rooms, ward rooms in which white patients are being treated?
>
> "A. No.
>
> "Q. And are white patients ever assigned to rooms in which Negro patients are being treated?
>
> "A. No.

---

3. That suit, Civil Action No. 8458, is now pending in the Orangeburg Division of this Court. This Court takes judicial notice of its own records here only for the limited purpose of casting light on Mrs. Gloria Rackley's intention as it applies to the question of domicile. This the Court can properly do where equity and justice so require. 31 C.J.S. Evidence § 50(3)a.

"Q. Could you tell us, please, approximately, percentage wise, how many beds in your hospital do you have reserved for the treatment of white people?

"A. Well, we have approximately 200—215, approximately—210 maybe.

"Q. About 210?

"A. Right.

"Q. Which you have reserved for the treatment of white people?

"A. That is correct.

"Q. So this leaves around 80 something beds which are reserved for the Negro patients,

"A. That is correct.

"Q. Are these 80 odd beds kept within a wing of the hospital which would make them contiguous to each other?

"A. Yes.

\* \* \* \* \* \*

"Q. \* \* \* Are Negro patients admitted into the north section?

"A. No.

\* \* \* \* \* \*

"Q. Are Negroes admitted to (the east) \* \* \* section?

"A. Not that patient section, no.

"Q. That is the east section?

"A. That is right. But this is the wing the emergency room is located and the operating room is located.

"Q. But otherwise no Negro patients may be treated in the emergency room—they would not be placed in any of the beds in the east section?

"A. That is right.

"Q. Now, did you describe a south section?

"A. Yes.

"Q. Is this where most of the 80 odd beds reserved for Negro patients are located?

"A. Yes.

\* \* \* \* \* \*

"Q. Are Negro patients admitted into the western section?

"A. No.

\* \* \* \* \* \*

"Q. How were you notified concerning where the Negro patients were consigned in the Orangeburg Regional Hospital?

"A. \* \* \* By the Board of Trustees.

"Q. By the Board of Trustees?

"A. Right.

"Q. And you, of course, make some kind of communication down the line to your staff employees?

"A. Very definitely \* \* \* (through) a chain of command.

\* \* \* \* \* \*

"COURT: You don't have any tax funds from the county?

"WITNESS: We get a small amount, not enough.

\* \* \* \* \* \*

"COURT: \* \* \* To your knowledge, does the Orangeburg Regional Hospital follow a policy, practice, custom or usage of maintaining and operating separate hospital facilities on the basis of race?

"WITNESS: No, sir.

\* \* \* \* \* \*

"Q. And so, if any Negro applied for admission to either the north, east or western wings he would be denied admission thereto as a matter of policy, wouldn't he?

"A. That is correct."

The segregation practices of the defendant hospital are "admitted" by virtue of defendants' failure to obey an Order of this Court.

Pursuant to Rule 36 of the Fed.Rules Civ.Pro., defendants were requested to

admit the truth of the following facts; severally:

1. That the Orangeburg Regional Hospital maintains separate wards for Negro patients and white patients;

2. That the Orangeburg Regional Hospital maintains separate private room facilities for Negro patients and white patients;

3. That the Orangeburg Regional Hospital maintains separate semi-private room facilities for Negro patients and white patients;

4. That the Orangeburg Regional Hospital maintains separate lavatory facilities for Negro patients and white patients.

Defendants objected to these requested admissions on the basis that they were "irrelevant to any issue in the case."

Honorable Charles E. Simons, Jr., United States District Judge, heard defendants' objecting motion, and considered also defendants' trial brief wherein defendants' argued "defendants should not be required to answer the requests for admission."

Judge Simons' able Order, dated August 17, 1964, provided in part, as follows:

"The plaintiffs * * * should be permitted to elicit information from the defendants as to whether the defendants are maintaining racially separate wards and room facilities in the operation of the hospital.

"It is therefore ORDERED that defendants submit answers to plaintiffs' requests for admissions."

Contrary to the express terms of this Order, defendants never answered plaintiffs' requests for admissions.

When asked about this in a pre-trial conference held on the day of the hearing counsel stated:

"COUNSEL: Our position on it is; that it is a question that can't be answered yes or no and that you ought to hear the Superintendent of the Hospital on what their policy is with reference to assigning beds in the wards.

"COURT: I will be glad to hear from the Superintendent of the Hospital but it seems to me some effort should have been made to comply with the Order of the Court.

"COUNSEL: Well, we didn't understand.

"COURT: I mean, the Court wouldn't have ordered it if it had been impossible.

"COUNSEL: No. I realize that.

"COURT: It says: 'It is therefore Ordered that defendants submit answers to plaintiffs' requests for admissions.' * * * (These are the last) words in the Order. Here is his interpretation, if you care to see it.

"COUNSEL: Well, I have the 37a, refusal answer, applies to Interrogatories and Depositions.

"COURT: What about 36?

"COUNSEL: 36. Written objections on the grounds the admissions are irrelevant, shall be filed.

"COURT: Yes, sir but you did nothing. You just did nothing. Here is a Court passing an Order and you do nothing.

"COUNSEL: Well, I'm sorry. I didn't understand that that was the penalty on 36. I thought 36 was a cost penalty.

"COURT: Well, here is an interpretation of it. You might look at that. If I am wrong I would like to know it.

"(Thereupon the Court handed book to Counsel.)

"COUNSEL: Well, I'm sorry. Our position is, that we deny that the hospital is now segregated."

█ It is clear under Rule 36 that defendants' failure to answer within the time provided will have the effect of having the requests considered as an

**518**

admission against them.[4] See Bowles v. Batson, 61 F.Supp. 839, (W.D.S.C.1945); aff'd Batson v. Porter, 154 F.2d 566, wherein Judge Wyche noted:

> "Failure to serve a sworn statement either denying matters of which admissions are requested or setting forth in detail the reasons why a party cannot either admit or deny such matters, resulting in admission of facts alleged in the complaint, in compliance with Rule 36(a) has been held to authorize a summary judgment. Walsh v. Connecticut Mut. Life Ins. Co., D.C., 26 F.Supp. 566.
>
> \* \* \* \* \* \*
>
> "The defendant did not comply with the provisions of the Rule 36, and therefore, the facts set forth in plaintiff's request for admissions for the purpose of this case are deemed admitted."

61 F.Supp. at 843. Note too, Masse v. Animal Repellants, Inc., 236 F.Supp. 69, 70 (E.D.S.C.1964); and 2A Barron & Holtzoff (Wright Ed.) § 834, n. 37.

Accordingly, the facts sought to be admitted in plaintiff's request for admissions are hereby considered admitted.

## III

It is therefore apparent that defendant hospital is a "state" institution or activity within the contemplation of the Fourteenth Amendment, it receives or has received funds from the United States, and that it has continued to maintain a policy, practice, usage and custom in discriminating against plaintiffs and the class they represent in the use and admission to use the facilities of the Orangeburg Regional Hospital on the basis of race.

At the hearing of this matter and in their brief, defendants asserted strongly that there were sound medical reasons for separating the patients by race when they were admitted to the hospital. The principal thrust of this argument, and the testimony they presented, was that the patients, in their normal lives, were "comfortable" in a segregated society, and because they would be more sensitive and otherwise "disoriented" as they were away from home and loved ones while in a hospital receiving treatment, they should be allowed to be assigned to beds in proximity to members of their own race.—This Court does not question the argument that psychological factors are an important element of patient recovery. Psychological factors are im-

---

4. Rule 36, Fed.Rules Civ.Proc., provieds in part as follows:

"(a) Request for Admission. \* \* \* Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than 10 days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part, together with a notice of hearing the objections at the earliest practicable time. If written objections to a part of the request are made, the remainder of the request shall be answered within the period designated in the request. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party deny only a part or a qualification of a matter of which an admission is requested, he shall specify so much of it as is true and deny only the remainder.

"(b) Effect of Admission. Any admission made by a party pursuant to such request is for the purpose of the pending action only and neither constitutes an admission by him for any other purpose nor may be used against him in any other proceeding."

Judge Simons' Order, which did not grant defendants "extra time" to Answer the requests, is dated August 19, 1964. The hearing on this matter by this Court was on November 30, 1964; an elapsed time of 102 days.

portant to all citizens. Cf. Brown v. Board of Education, 347 U.S. 483, 494, 74 S.Ct. 686, 98 L.Ed. 873. However, it is clearly established that governmental officers or agents cannot practice racial segregation. As this Court noted in Randall v. Sumter School Dist. No. 2, Sumter, S. C., 232 F.Supp. 786 (E.D.S.C. 1964):

> "Justification to segregate on the basis of * * * alleged 'differences' is no longer permissible; the issue is no longer litigable. The law is clear: Racial classifications are irrelevant and invidious. Goss v. Board of Education, 373 U.S. 683, 687, 83 S.Ct. 1405, 10 L.Ed.2d 632. '(N)o official * * * (action) plan or provision of which segregation is the inevitable consequence may stand under the Fourteenth Amendment.' Id. at 689, 83 S.Ct. at 1409. See also Brown v. School District No. 20, Charleston, South Carolina, supra, 226 F.Supp. at 825–826, * * *." 232 F.Supp. at 789.

The core of the complaint here is that Orangeburg Regional Hospital is a governmentally owned and operated facility and that under the Fourteenth Amendment the hospital and its officials may not practice racial discrimination.

Mr. Mabry further testified that the Orangeburg Regional Hospital is a corporate body owned by the County of Orangeburg. As to this point there is no dispute. Nor is there any dispute that the defendant hospital has received over one. million dollars from the United States for expansion of hospital facilities. In fact, in 1953 the State Legislature passed an Act so that some $300,000 could be obtained from the United States.[5]

As Judge Sobeloff noted in Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir.1963):

> "Our concern is with the Hill-Burton program, and examination of its functioning leads to the conclusion that we have state action here. Just as the Court in the Parking Authority case attached major significance to 'the obvious fact that the restaurant is operated as an integral part of a public building devoted to a public parking service,' [Burton v. Wilmington Parking Authority] 365 U.S. [715] at 724, 81 S.Ct. [856] at 864, 6 L.Ed.2d 45, we find it significant here that the defendant hospitals operate as integral parts of comprehensive joint or intermeshing state and federal plans or programs designed to effect a proper allocation of available medical and hospital resources for the best possible promotion and maintenance of public health. Such involvement in discriminatory action 'it was the design of the Fourteenth Amendment to condemn.' 365 U.S. at 724, 81 S.Ct. at 864, 6 L.Ed.2d 45."

323 F.2d at 967, 968, cert. den. 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659. This decision makes it quite clear that a state or private hospital which receives funds from the United States cannot

---

5. S.C.Acts 1953, No. 509 in part provides:
  "Whereas, the Federal Government has offered a grant of three hundred thousand dollars to the hospital for the purpose of enlarging its facilities on condition that a sum not less than two hundred thousand dollars be provided to be used in conjunction with this grant; and,
  "Whereas, it appears that the only source from which this sum can be obtained is the County of Orangeburg and, while the county is willing to make the advancement with the title to the property remaining in the City of Orangeburg, it wishes to be assured that its investment will be protected, and continued operation as a public institution assured, *and that the facilities afforded by the hospital will be equally available to all the people of the county.* Now, therefore, with these general objectives in view, this act is adopted." [Emphasis supplied].
  It is interesting to note the italicized portion of this Act.

practice racial discrimination,[6] and destroyed whatever basis defendants may have had hitherto to claim that "separate-but-equal" facilities would stand under constitutional attack.

According to the testimony of the director of defendant hospital, defendants continue to practice racial segregation and evidence no intention of terminating that practice notwithstanding the recent enactment of legislation which specifically prohibits discrimination on the grounds of race in "any program or activity receiving Federal financial assistance." 78 Stat. 252, 42 U.S.C.A. § 2000d, though this Act is not being taken into account in making this decision.

### IV

Plaintiffs are entitled to the relief for which prayer has been made, a permanent injunction.

█ This Court, in the exercise of its discretion, and so that the healing and lifesaving activities of defendant hospital will not be jeopardized by a drastic change in routine in the middle of the stream, as it were, grants defendants a period of 60 days from the date hereof to file a plan which will fully and completely implement the letter and the spirit of this decision. The plan, if approved by this Court, shall go into effect 45 days thereafter.

It is recognized that Constitutional rights are "present" rights, and are not such that this or any court can arbitrarily deny or allow whimsically because some in society do not feel that they should be enjoyed by all *in presenti*. But, by the same token, if defendants are given this time to smoothly effectuate that which ought to be effectuated, then this Court feels that the law, and respect for the law will be preserved, with assurance that this signal change will not jeopardize the health of patients by interrupting the

orderly and efficient operations of the hospital.

If a satisfactory plan is not presented on or before the 60 days mentioned above, then this Court will have no other recourse than to grant plaintiffs' request, without the assistance of those who know the workings of the hospital best.

And it is so ordered.

---

6. There is no claim that Orangeburg Regional Hospital is a "private" facility because defendants' Answer admits it is owned by Orangeburg County. Accordingly, plaintiffs' case is in a better posture than plaintiffs in Simkins, because here Hill-Burton funds were given to a public facility, an arm of the State. See discussion in Bell v. Georgia Dental Ass'n, 231 F.Supp. 299, 300, n. 1 (N.D. Ga.1964).