James McLAUGHLIN et al., Plaintiffs-Appellants,

v.

Albert TILENDIS et al., Defendants-Appellees.

No. 16562.

United States Court of Appeals Seventh Circuit.

June 12, 1968.

Andrew J. Leahy, Mary Lee Cullen Leahy, John Ligtenberg, Chicago, Ill., for plaintiffs-appellants.

Louis Ancel, Ronald M. Glink, Harold L. Summerfield, Ancel, Stonesifer & Glink and Summerfield & Summerfield, Chicago, Ill., for defendants-appellees.

Before CASTLE, Chief Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This action was brought under Section 1 of the Civil Rights Act of 1871 (42 U.S.C. § 1983)[1] by John Steele and James McLaughlin who had been employed as probationary teachers by Cook County, Illinois, School District No. 149. Each sought damages of $100,000 from the Superintendent of School District No. 149 and the elected members of the Board of Education of that District.

Steele was not offered a second-year teaching contract and McLaughlin was dismissed before the end of his second year of teaching. Steele alleged that he was not rehired and McLaughlin alleged that he was dismissed because of their association with Local 1663 of the American Federation of Teachers, AFL-CIO. Neither teacher had yet achieved tenure.

In two additional Counts, Local 1663 and the parent union, through their officers and on behalf of all their members, sought an injunction requiring the defendants to cease and desist from discriminating against teachers who distribute union materials and solicit union membership.

■ The District Court granted the defendants' motion to dismiss the complaint, holding that plaintiffs had no First Amendment rights to join or form a labor union, so that there was no jurisdiction under the Civil Rights Act.[2] The District Court's memorandum opinion did not consider the alternative defense presented in the motion that defendants were immune from suit under the Illinois Tort Immunity Act (Ill.Rev. Stats.1967, Ch. 85, Sec. 2–201). Concluding that the First Amendment confers the right to form and join a labor union, we reverse on the ground that the complaint does state a claim under Section 1983.

■ It is settled that teachers have the right of free association, and unjustified interference with teachers' associational freedom violates the Due Process clause of the Fourteenth Amendment. Shelton v. Tucker, 364 U.S. 479, 485–487, 81 S.Ct. 247, 5 L.Ed.2d 231. Public employment may not be subjected to unreasonable conditions, and the assertion

1. Section 1983 of Title 42 of the U.S.Code provides:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. The District Court granted McLaughlin, an Indiana citizen, leave to file an amended complaint for breach of contract, asserting diversity of citizenship, but McLaughlin chose to appeal.

of First Amendment rights by teachers will usually not warrant their dismissal. Keyishian v. Board of Regents, 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629; Garrity v. State of New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562; Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. Unless there is some illegal intent, an individual's right to form and join a union is protected by the First Amendment. Thomas v. Collins, 323 U.S. 516, 534, 65 S.Ct. 315, 89 L.Ed. 430; see also Hague v. C. I. O., 307 U.S. 496, 512, 519, 523–524, 59 S.Ct. 594, 83 L.Ed. 1423; Griswold v. State of Connecticut, 381 U. S. 479, 483, 85 S.Ct. 1678, 14 L.Ed.2d 510; Stapleton v. Mitchell, 60 F.Supp. 51, 59–60, 61 (D.Kan.1945; opinion of Circuit Judge Murrah), appeal dismissed, Mitchell v. McElroy, 326 U.S. 690, 66 S. Ct. 172, 90 L.Ed. 406. As stated in N. A. A. C. P. v. State of Alabama, 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488:

"It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech."

■ Even though the individual plaintiffs did not yet have tenure, the Civil Rights Act of 1871 gives them a remedy if their contracts were not renewed because of their exercise of constitutional rights. Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966), certiorari denied, 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542; Bomar v. Keyes, 162 F.2d 136, 2d Cir. 1947), certiorari denied, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400; Smith v. Board of Education of Morrillton School District No. 32, 365 F. 2d 770 (8th Cir. 1966); Rackley v. School District No. 5, Orangeburg County, S. C., 258 F.Supp. 676 (D.S.C.1966); Williams v. Sumter School District No. 2, 255 F.Supp. 397 (D.S.C.1966).

■ Just this month the Supreme Court held that an Illinois teacher was protected by the First Amendment from discharge even though he wrote a partially false letter to a local newspaper in which he criticized the school board's financial policy. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. There is no showing on this record that plaintiffs' activities impeded "[the] proper performance of [their] daily duties in the classroom." Idem, 88 S.Ct. at p. 1737. If teachers can engage in scathing and partially inaccurate public criticism of their school board, surely they can form and take part in associations to further what they consider to be their well-being.

■ The trial judge was motivated by his conclusion that more than free speech was involved here, stating:

"The union may decide to engage in strikes, to set up machinery to bargain with the governmental employer, to provide machinery for arbitration, or may seek to establish working conditions. Overriding community interests are involved. The very ability of the governmental entity to function may be affected. The judiciary, and particularly this Court, cannot interfere with the power or discretion of the state in handling these matters."

It is possible of course that at some future time plaintiffs may engage in union-related conduct justifying their dismissal. But the Supreme Court has stated that

"Those who join an organization but do not share its unlawful purposes and who do not participate in its unlawful activities surely pose no threat, either as citizens or as public employees." Elfbrandt v. Russell, 384 U.S. 11, 17, 86 S.Ct. 1238, 1241, 16 L.Ed.2d 321.

Even if this record disclosed that the union was connected with unlawful activity, the bare fact that membership does not justify charging members with their organization's misdeeds. Idem. A contrary rule would bite more deeply into associational freedom than is necessary to achieve legitimate state interests, thereby violating the First Amendment.

Illinois has not prohibited membership in a teachers' union, and defendants do not claim that the individual plaintiffs engaged in any illegal strikes or picketing.[3] Moreover, collective bargaining contracts between teachers' unions and school districts are not against the public policy of Illinois. Chicago, etc., Education Association v. Board of Education of City of Chicago, 76 Ill.App.2d 456, 222 N.E.2d 243 (1966). Illinois even permits the automatic deduction of union dues from the salaries of employees of local governmental agencies. Ill.Rev.Stats.1967, Ch. 85, Sec. 472. These very defendants have not adopted any rule, regulation or resolution forbidding union membership. Accordingly, no paramount public interest of Illinois warranted the limiting of Steele's and McLaughlin's right of association. Of course, at trial defendants may show that these individuals were engaging in unlawful activities or were dismissed for other proper reasons, but on this record we hold that the complaint sufficiently states a justifiable claim under Section 1983. There is nothing anomalous in protecting teachers' rights to join unions. Other employees have long been similarly protected by the National Labor Relations Act. See National Labor Relations Board v. Jones & Laughlin, 301 U.S. 1, 33, 57 S.Ct. 615, 81 L.Ed.2d 893.

The second ground of defendants' motion to dismiss was that they are protected against suit by the Illinois Tort Immunity Act (Ill.Rev. Stats.1967, Ch. 85, Sec. 2–201).[4] Under the Supremacy Clause, that statute cannot protect defendants against a cause of action grounded, as here, on a federal statute. Legislators and judges have broad immunity under Section 1983 because in enacting that statute Congress did not intend to overturn their pre-existing defense. Tenney v. Brandhove, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019; Pierson v. Ray, 386 U.S. 547, 554–555, 87 S.Ct. 1213, 18 L.Ed.2d 288. However, other officials, such as present defendants, retain only a qualified immunity, dependent on good faith action. Pierson v. Ray, supra, at p. 555, 87 S.Ct. 1213; Note, The Doctrine of Official Immunity under the Civil Rights Acts, 68 Harv.L.Rev. 1229, 1235–1236 (1955); Note, The Proper Scope of the Civil Rights Act, 66 Harv.L.Rev. 1285, 1299 (1953). Even under the Illinois Act, immunity is conditioned upon a showing of good faith (Baum, Tort Liability of Local Governments and Their Employees: An Introduction to the Illinois Immunity Act, Ill.Law Forum (1966) 981, 1003–1004), and there has been no hearing on that question. In this Court and in their brief below the defendants also rely on common law immunity, but we rejected a similar contention in Progress Development Corp. v. Mitchell, 286 F.2d 222, 231 (7th Cir. 1961), where it was held that common law immunity did not extend to members of the Deerfield, Illinois, Park Board charged with discriminating against Negroes. Unless they can show good faith action, the reach of that decision extends to the present defendants who are alleged to have discriminatorily discharged Steele and McLaughlin for their union membership. To hold defendants absolutely immune from this type of suit would frustrate the very purpose of Section 1983. Jobson v. Henne, 355 F.2d 129, 133 (2nd Cir. 1966).[5] At best, defendants' qualified

---

3. In Illinois, strikes and certain picketing by public employees are enjoinable. Board of Education of Community Unit School Dist. No. 2 v. Redding, 32 Ill.2d 567, 207 N.E.2d 427 (1965).

4. Sec. 2–201 provides:
    "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is

    not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

5. As shown in the *Jobson* case (355 F.2d at p. 134, note 11), part of Duzynski v. Nosal, 324 F.2d 924 (7th Cir. 1963), on which defendants rely, turns on the absence of state action. No such defense is available here. The remainder of *Duz-*

immunity in this case means that they can prevail only if they show that plaintiffs were discharged on justifiable grounds. Thus here a successful defense on the merits merges with a successful defense under the qualified immunity doctrine.

Finally in this connection, it should be noted that immunity was *sub silentio* denied to the school officials involved in the *Johnson, Bomar, Smith, Rackley* and *Williams* cases, supra; see also West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637–638, 63 S.Ct. 1178, 87 L.Ed. 1628.

The judgment of the District Court is reversed and the cause is remanded for trial.

*ynski,* like Phillips v. Nash, 311 F.2d 513 (7th Cir. 1962), certiorari denied, 374 U.S. 809, 83 S.Ct. 1700, 10 L.Ed.2d 1033, is concerned with persons protected by judicial immunity.