**Charles Robert CLARKE, Plaintiff,**

v.

**Elmer O. CADY et al., Defendants.**

**No. 69–C–225.**

United States District Court,
W. D. Wisconsin.

May 11, 1973.

Anthony J. Theodore, Corrections Legal Services Program, Madison, Wis., for plaintiff.

Robert W. Warren, Atty. Gen., Madison, Wis., by Robert D. Repasky, Asst. Atty. Gen., for defendants.

JAMES E. DOYLE, District Judge.

This is a civil action for monetary, declaratory and injunctive relief. Plaintiff has been granted leave to proceed *in forma pauperis*. 28 U.S.C. § 1915. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3).

In an order entered September 11, 1972, I dismissed the amended complaint as to plaintiff's claim for declaratory and injunctive relief preventing defendants from confining plaintiff in segregation without adequate procedural safeguards and from imposing punishment on plaintiff which violates the Eighth Amendment and as to plaintiff's damage claim against defendants Powers, Schmidt, and Gray. The motion to dismiss was denied as to plaintiff's monetary claim against defendant Cady and as to plaintiff's claim against all defendants for the restoration of "good time."

In a Pretrial Conference Memorandum, entered January 5, 1973, a briefing schedule was established on the question of whether defendant Cady may assert the affirmative defense of good faith in response to plaintiff's monetary claim. This question is presently before the court. For the purpose of deciding upon this pretrial order only, I shall assume that, if permitted to do so at trial, defendant Cady will be able to prove the allegations of fact upon which he bases this affirmative defense.

The amended complaint alleges in part that plaintiff is presently confined in the Wisconsin State Prison; that on July 7, 1969, he was placed in the "Segregation Building," where he was confined for 7 months; that he was never given a hearing on the charges which resulted in his confinement in segregation nor informed about said charges; that on or about October 1, 1969, he received a summons from the Dodge County Court charging him with assault; that on or about January 6, 1970, these charges were dismissed; that six weeks later he was released from segregation; and that as a result of his confinement in segregation, he was deprived of good time. Plaintiff further alleges that the conditions in the segregation cell constituted cruel and unusual punishment.

Defendant Cady affirmatively alleges that on July 6, 1969, there was a disturbance at the Wisconsin State Prison involving an attack upon three guard officers by prisoners; that reports indicated that plaintiff was observed assaulting a guard; that a subsequent investigation by the Wisconsin State Prison staff in conjunction with the Sheriff's Department of Dodge County indicated that plaintiff had assaulted an officer; that assault upon an officer is a felony; that as a number of inmates were present at the time of the assault, it seemed likely that there would be witnesses for a subsequent prosecution; that defendant Cady believed that if plaintiff were returned to the general prison population there would be a substantial risk of resumption of assaultive behavior by plaintiff; that on July 6, 1969, at least one inmate was placed in temporary lockup for his own protection from the assaulting inmates; that plaintiff is presently serving sentences on charges of rape and armed robbery, which are assaultive offenses; that prior to May, 1971, defendant had been advised and was of the opinion that discipline proceedings could not be instituted by the prison against an inmate who

was awaiting trial upon state criminal charges arising out of the same factual circumstances; and that therefore plaintiff was placed in segregation to avoid substantial security risks, without a hearing, awaiting the state criminal trial.

Plaintiff advances two theories here. I will refer to the first as a federal statutory argument, and to the second as a state statutory argument. The first is that good faith is only a defense in some 42 U.S.C. § 1983 actions; that in order to determine whether good faith is an available defense one must look to the common law; that false imprisonment is the common law tort most closely analagous to the alleged wrongdoing in this case; that at common law, good faith is not a defense to false imprisonment; and that consequently good faith is no defense to plaintiff's § 1983 action. Plaintiff's second theory is that the Wisconsin indemnification statute, Wis. Stats. § 270.58(1), removes any rationale for granting immunity to the defendant.

Defendant emphasizes that he is not asserting the defense of "subjective good faith," i. e., lack of malice or bad purpose, but of "objective good faith," reasonably prudent lawful action; that "objective good faith" is a defense to false imprisonment at common law; and that regardless of common law analogues, a doctrine of qualified immunity, dependent on good faith action, has developed in § 1983 actions.

*Plaintiff's Federal Statutory Argument*

In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court recognized that monetary relief is available to an injured plaintiff under § 1983. In that case, it was alleged that 13 police officers had broken into the petitioners' home and subjected petitioners to an extensive search without a warrant. Defendants moved to dismiss on the ground that the complaint failed to state a claim. The Supreme Court held that the complaint

stated a claim. In construing § 1983, the Court stated (at 187, 81 S.Ct. at 484):

In the *Screws* case [Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495] we dealt with a statute that imposed criminal penalties for acts "willfully done." We construed that word in its setting to mean the doing of an act with "a specific intent to deprive a person of a federal right." . . . We do not think that gloss should be placed on [§ 1983] which we have here. The word "willful" does not appear in [§ 1983]. Moreover, [§ 1983] provides a civil remedy, while in the *Screws* case we dealt with a criminal law. . . . Section [§ 1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.

Pierson v. Ray, 386 U.S. 547, 187 S. Ct. 1213, 18 L.Ed.2d 288 (1967), involved the arrest of members of a group of white and Negro clergymen attempting to use a segregated interstate bus terminal waiting room in Jackson, Mississippi, in 1961. The clergymen were charged with conduct breaching the peace in violation of a Mississippi statute. In 1965, the statute was held to be unconstitutional. The Court of Appeals had held that under Monroe v. Pape, the police officers had no immunity under § 1983, although they would have had immunity under the state common law of arrest so long as they acted in good faith under a state statute which they were entitled to presume to be valid. Pierson v. Ray, 352 F.2d 213, 218 (5th Cir. 1965). The Court of Appeals had stated (at 218):

Inherent in the Monroe holding is the principle that good faith and reliance upon a state statute subsequently declared invalid are not available as defenses. Monroe v. Pape did not expressly rule upon the question of immunity but the result necessarily implies rejection of such a defense as a general proposition.

The Supreme Court reversed in part and stated (386 U.S., at 555–557, 87 S. Ct. 1213 at 1218–1219):

The common law has never granted police officers an absolute and unqualified immunity, and the officers in this case do not claim that they are entitled to one. Their claim is rather that they should not be liable if they acted in good faith and with probable cause in making an arrest under a statute that they believed to be valid. Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. [Citations omitted]. A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. Although the matter is not entirely free from doubt, the same consideration would seem to require excusing him from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional. . . .

. . . Monroe v. Pape presented no question of immunity . . . [W]e in no way intimated [there] that the defense of good faith and probable cause was foreclosed by the statute. We . . . held that the complaint should not be dismissed for failure to state that the officers had "a specific intent to deprive a person of a federal right," but this holding, which related to the requirements of pleading, carried no implications as to which defenses would be available to the police officers. . . . Part of the background of tort liability, in the case of police officers making an arrest, is the defense of good faith and probable cause.

We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983. . . . The Court of Appeals ordered dismissal of the common-law count on the theory that the police officers were not required to predict our decision. . . . We agree that a police officer is not charged with predicting the future course of constitutional law.

The application of *Pierson* presents difficulties stemming from the undefined term "good faith" as used in *Pierson* both by the Court of Appeals and by the Supreme Court. It appears from the opinion of the Court of Appeals that when it discussed "good faith" as a defense to a common law tort, it was not speaking of reasonable reliance upon the constitutionality of a statute. Perhaps it intended "good faith" to mean the absence of malice or bad purpose. In any case, the Court of Appeals decided that neither the defense of "good faith," nor the proposition that officers are entitled to rely upon the constitutionality of at least some state statutes, had survived Monroe v. Pape.

The Supreme Court in *Pierson* construed the defense of the officers in three parts: (1) that they acted in good faith; (2) that they acted with probable cause; and (3) that they believed the statute to be valid. The Court explicitly examined the prevailing common law of torts in the country and noted the rationale underlying the defense of probable cause. The Court then proceeded to state that "the same consideration" would seem to support a defense based upon a reasonable belief in the validity of the statute, not stating whether this is also the prevailing common law in the nation. Finally, the Court stated that it holds that "good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983." Because "good faith" and "probable cause" are mentioned in this sentence while reasonable belief in the validity of the statute is not, there may be some uncertainty

whether the latter was held by the Supreme Court to constitute a valid defense. However, given the Supreme Court's discussion about a reasonable belief in the validity of the statute, given the Supreme Court's statement that "a police officer is not charged with predicting the future course of constitutional law," and given the Court of Appeals' explicit reference to the rule adopted in Mississippi that "a public officer is not charged with the duty of determining at his peril whether a statute is valid when he is acting under it," 352 F.2d 213, 219, I can only conclude that a reasonable belief in the validity of a statute was held by the Supreme Court to constitute a defense, perhaps as a form of "good faith," perhaps as a concept distinct from "good faith."

In the instant case, there is no allegation that the defendant Cady acted with evil motives or malicious intent. Instead, the plaintiff asserts that reasonable reliance upon the then prevailing case law relating to prisoners is not available as a defense because "good faith" is not an available common law defense for false imprisonment.

■ The question is whether the Supreme Court's reasoning in *Pierson*, permitting the defense of reasonable reliance on the present constitutionality of the law, is applicable only in § 1983 actions arising under the Fourth Amendment, which may be easily analogized to common law actions of false arrest. I note that the statement in *Monroe*, that § 1983 "should be read against the background of tort liability," does not require me to define the available defenses under § 1983 by mechanically examining tort analogues. Instead, in each instance, a consideration of the factors underlying the tort defense must be considered. See *Pierson, supra.*

First, I am not persuaded by plaintiff's assumption that the appropriate tort analogue here is false imprisonment. At this point in the proceedings, it appears that plaintiff asserts that he has been injured by the defendants in two respects: (1) that he was confined without being afforded procedural due process; and (2) that he was incarcerated without justification. At the common law, there are two broad classes of torts which may arise from arrests and confinements by public officers: (1) malicious prosecution and (2) false arrest and imprisonment. As stated by Prosser:

> The difference is one of the regularities of the legal process under which the plaintiff's interests have been invaded. If he is arrested or confined without a warrant, or legal authority apart from a warrant, malicious prosecution will not lie, since the essence of that tort is the perversion of proper legal procedure and the remedy is false imprisonment. On the other hand, *if there is valid authority, or due authority apart from it*, the arrest is not "false" and the action must be one of malicious prosecution. Malicious prosecution is the less rigorous of the two remedies. It assumes that the defendant has proceeded under legal formalities, and therefore takes into account his good motives and probable cause for his conduct, which are immaterial in false imprisonment, where the tort consists of a departure from due process of law. (emphasis added) Prosser, Law of Torts § 113 at 853.

Here, if I assume that defendant is entitled to rely upon the then current state of the law, and if under the then current state of the law it was permissible for a warden to place an inmate in segregation without affording him a hearing and on the basis of the warden's belief that the inmate had assaulted an officer and was likely to cause further security problems if returned to the general population, the defendant acted with valid and due authority. If so the analogy to false imprisonment is inapposite. The only available tort analogue would be malicious prosecution.

The crux of the matter then is whether the defendant may assert his reasonable reliance on the constitutionality of then current prison policies

when such policies were not clearly in conflict with then binding court decisions. I can perceive no persuasive legal basis for holding that a police officer may rely upon his reasonable belief that a criminal statute is constitutional, prior to a final binding adjudication of its constitutionality, but that a warden of a prison may not rely upon his reasonable belief that certain prison policies are constitutional, prior to a final binding adjudication of their constitutionality.

I doubt whether the general presumption of validity which attends legislative enactments, and regulations promulgated by administrative agencies pursuant to clear legislative guidelines, should attend in full force *ad hoc* actions by administrative officials acting without legislative direction. *See* dissenting opinion of Judge Stevens in Morales v. Schmidt, No. 72–1373 (7th Cir., Jan. 17, 1973, slip opinion, pp. 21–22). However, I am not ruling presently on the constitutionality of the warden's *ad hoc* action. I am considering whether defendant warden could rely upon his reasonable belief that such *ad hoc* policy was constitutional. In order to establish that his reliance upon the constitutionality of an *ad hoc* policy was reasonable, the defendant may have to demonstrate that he exercised more care than would be necessary to establish that his reliance upon the constitutionality of a statute was reasonable. However, I cannot conclude that there are no circumstances where such reliance on the constitutionality of *ad hoc* action would be reasonable: for example, where a defendant had consulted extensively with competent attorneys and where the area of the law is unclear and changing.

Plaintiff advances the theory that the police officer is in a more difficult position than the defendant here because the police officer must choose between arresting the suspect under an unconstitutional statute and exposing himself to tort liability or acting constitutionally by refusing to make the arrest, and perhaps violating his legal duties by inadequately performing his job. In contrast, plaintiff argues, defendant Cady may have helped to promulgate as well as to enforce the customary policies followed at the prison. Plaintiff argues that defendant Cady could have altered said practices unilaterally and thus freed himself from the policeman's dilemma. Nonetheless, in order to decide whether or not to alter any given policy, defendant Cady, like the policemen, would be required to predict adequately future constitutional developments in the rapidly changing area of prisoner rights.

Furthermore, turning again to the common law of tort immunity, absolute immunity has been afforded to legislators who promulgate unconstitutional laws and qualified immunity has been extended to administrative officers who engage in "discretionary" or "quasi-judicial" acts as opposed to "ministerial duties." Prosser, Law of Torts § 126 at 1014–17. As plaintiff admits, defendant Cady was performing a "discretionary" duty while policemen's tasks are ordinarily "ministerial." Therefore, under the common law, the defendant is a more likely candidate for immunity than is the policeman in *Pierson*.

In sum, on the basis of Monroe v. Pape and Pierson v. Ray, I reject the mechanical "tort analogue" approach suggested by plaintiff. Considering the present action against the background of tort liability, but more flexibly, I conclude that the defendant may assert as a defense that he reasonably relied upon the validity of prison policies which were not in conflict with then binding authority.

Recent 7th Circuit cases in this area are not dispositive of the difficult issues raised here. In McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968), where former teachers brought an action for damages against the superintendent of the school district and the elected members of the board of education, alleging that plaintiffs were dismissed solely because of their union membership, the Court of Appeals stated that the defendants retained at most a qualified immunity, dependent upon a showing of good

faith action, which would require a demonstration that the teachers were discharged on justifiable grounds. *McLaughlin, supra* at 290–291. The Court of Appeals did not discuss any tort analogies nor did it discuss whether the defendants were confronted with an unresolved constitutional question at the time of the teachers' dismissal and nonrenewal.

In Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968), cited by plaintiff here, a § 1983 action was brought against a police officer alleging ·that he had arrested and detained the plaintiff without a warrant and without probable cause. Although the reported opinion is not explicit, it clearly implies that the suit was for damages. The district court had directed a verdict in favor of the defendant at the close of the plaintiff's case. The district court concluded that at the common law, plaintiff would have made out a *prima facie* case of false imprisonment, but held that in order to prove up a case under § 1983, plaintiff would have been required to establish that the false imprisonment was part of a systematic policy of discrimination against a class of persons. *Joseph, supra* at 369. The Court of Appeals reversed, holding that plaintiff need have proved only that the arrest was made without a warrant and without probable cause, and that he need not have proved the additional circumstance that the officer acted with malice or with specific intent to deprive the plaintiff of federal rights. *Joseph, supra* at 370. Although the defendant had not yet presented any evidence to the district court, the Court of Appeals went on to state that defenses to a § 1983 cause of action are "defenses typical of tort causes of action," but that a police officer is not entitled "to a defense of good faith when he makes an arrest without a warrant and without probable cause." *Joseph, supra* at 369–370. This case did not reach the problem of whether the defense of reasonable reliance on the validity of a customary practice, not in conflict with then binding authority, is available to a defendant

in a § 1983 action. Even if it had been customary police practice to make arrests under the circumstances present in *Joseph,* at that time there was no question that such arrests were unconstitutional. See *Joseph, supra.* In concluding that "good faith" was not available to the defendant in *Joseph,* the Court of Appeals was clearly limiting "good faith" to an absence of malice or an absence of "flagrancy."

Finally, in Briscoe v. Kusper, 435 F. 2d 1046 (7th Cir. 1970),· a class action brought by candidates and registered voters for declaratory relief with respect to the constitutionality of practices of the city board of election commissioners in processing objections to aldermanic nominating petitions, the Court of Appeals held that the application of a new administrative rule which nullified previously acceptable signatures on petitions, without prior notice to candidates, violated due process; and that the board's reliance upon evidence considered *in camera* and never accessible to candidates and objectors violated due process. Turning to the question of immunity, the Court of Appeals stated:

> It is unnecessary to determine whether defendants' office vests them with the broad immunity from damages conferred upon judicial officers. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; Daly v. Stratton, 326 F.2d 340, 342 (7th Cir. 1964); but see McLaughlin v. Tilendis, 398 F.2d 287, 290–291 (7th Cir. 1968); cf. Smith v. Allwright, 321 U. S. 649, 64 S.Ct. 757, 88 L.Ed. 987. Even without broad judicial immunity, damages are inappropriate where defendant officials have acted out of good faith and upon reasonable grounds. *Cf.* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288; McLaughlin v. Tilendis, *supra,* 398 F. 2d p. 290. Such a defense of qualified immunity, we believe, is available to defendant in this case.

Although found unconstitutional by this Court, the practices of the Board were nevertheless within the ambit of

permissible discretion as it appeared at that time. The defendants acted, as the district court indicated, "in apparent good faith." Bacon v. Holzman, 264 .F.Supp. 120, 133 (N.D.Ill. 1967). Under these circumstances, personal liability for damages should not attach, regardless of whether such state action technically contravened the Fourteenth Amendment. *Briscoe, supra* at 1057–1058 of 435 F.2d.

The district court had stated in pertinent part:

> As a result and in apparent good faith, technical grounds are often utilized to disqualify nominating petitions. For the most part such action is statutorily on impeccable ground. But from what we could tell . . . by a zealously restrictive reading of the statute the Board apparently makes it exceedingly difficult for a candidate to qualify his name for a place on the ballot. . . . Bacon v. Holzman, 264 F.Supp. 120, 133 (N. D.Ill.1967).

■ The above cited language from the Court of Appeals in *Briscoe* could be read to stand for the broad proposition that whenever public officials, performing discretionary functions, act in conformity with state statutes, they are immune from monetary liability under § 1983.[1] However, I need not read *Briscoe* in so sweeping a manner here, as I hold only that the warden of a prison is immune from damages under § 1983 when he reasonably relies upon the validity of a prison practice which has only subsequently been determined to be unconstitutional, and acts without malice.[2]

### Plaintiff's State Statutory Argument

■ Plaintiff claims that the Wisconsin indemnification statute, Wis.Stats. § 270.58(1), removes any rationale for granting immunity to the defendant. Plaintiff asserts that under 42 U.S.C. § 1988,[3] this court may utilize state law to fashion remedies in § 1983 actions, so long as said remedies are consistent

---

1. This reading is not in conflict with *Joseph*, where the police officer was performing a "ministerial" task.

2. Since there is no allegation of malice to which defendant Cady must respond in the present case, and since he has made clear that he does not intend to rely upon an absence of malice as an affirmative defense, I have omitted mention of malice in the preceding discussion except as necessary to an understanding of the various opinions of the Supreme Court and the Court of Appeals in earlier cases. However, I wish to emphasize that I am not presently holding that if malice is present, a defendant may nevertheless successfully defend on the ground that he reasonably relied upon the validity of a prison practice which has only subsequently been determined to be unconstitutional. There are four possible "motive combinations:" (1) action without malice and with a reasonable belief in the constitutionality of the prison policy; (2) action without malice and without a reasonable belief in the constitutionality of the prison policy; (3) action with malice but with a reasonable belief in the constitutionality of the prison policy; and (4) action with malice and without a reasonable belief in the con-

stitutionality of the prison policy. Here, I need only rule on the first motive combination.

3. 42 U.S.C. § 1988 provides as follows:
   Proceedings in vindication of civil rights: The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

with 42 U.S.C. § 1983 and the United States Constitution; that Wis.Stats. § 270.58(1) has the effect of permitting monetary relief against state officials; that because said state statute provides for the indemnification of public officials, their anxiety about possible "out of pocket pecuniary loss" is avoided; and that consequently, said statute undercuts the rationale of affording state officials immunity under § 1983.

Wis.Stats. § 270.58(1) provides in pertinent part:

Where the defendant in any action or special proceeding is a public officer or employe and is proceeded against in his official capacity or is proceeded against as an individual because of acts committed while carrying out his duties as an officer or employe and the jury or court finds that he acted in good faith the judgment as to damages and costs entered against the officer or employe shall be paid by the state or political subdivision of which he is an officer or employe.

For the purpose of this pretrial order, I shall assume that plaintiff's contentions about the interaction of 42 U.S.C. § 1983 and 42 U.S.C. § 1988 are correct. See Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L. Ed.2d 386 (1969). Furthermore, I am persuaded that the instant case is distinguishable from Ries v. Lynskey, 452 F.2d 172 (7th Cir. 1971). There the Court of Appeals rejected the argument that a state's abrogation of municipal immunity entitled a plaintiff to sue a municipality for damages under § 1983. But in Ries, the Court of Appeals could rely upon legislative history of § 1983, elucidated by the Supreme Court in Monroe v. Pape, strongly indicating that Congress did not intend municipalities to be "persons" under that act. That bit of Congressional history is not relevant to whether any particular form of "good faith" defense is available to a defendant in a § 1983 action.

From Monroe and Pierson it appears that Congress intended § 1983 to be read against the background of common law tort liability. For the reasons stated in the first section of this opinion, I have concluded that the defendant here is immune from monetary liability if he acted without malice and with reasonable reliance on the constitutionality of prison practices. The question is whether Wis. Stats. § 270.58(1) provides an adequate substitute for the doctrine of qualified immunity, enabling me to award damages to the plaintiff without materially changing the status of the defendant in this litigation.

Plaintiff suggests that Wis.Stats. § 270.58(1) will operate to remove officials' apprehension of "out of pocket pecuniary loss," and consequently that said officials will not be discouraged from exercising their legal authority. The defendant urges that other policies are also at stake here: (1) that neither the individual officer not the state should be liable for damages where an official has acted in accord with his reasonable and prudent assessment of the law existing at the time of his action; and (2) that retroactive liability would stagnate administrative decision-making regardless of whether the officer or the state bears the expense.

One reason not to impose monetary liability upon public officials for certain kinds of conduct is that the constant threat of out-of-pocket pecuniary loss might inhibit them to an undesirable degree in the free discharge of their duties. This reason is diminished to the extent that the public officials may be made secure in the knowledge that, without delay or difficulty, they will be shielded by the public treasury from any personal monetary loss.

But if the public treasury is tapped on one or two occasions to cover the liability of an official, it is reasonable to suppose that his or her superior would exert pressure to avoid risking the necessity for further disbursements of public funds. The inhibition upon the free discharge of the official's duties would persist, but in different form. Also, apart from its possible personal finan-

cial consequences, a public official might well desire to avoid a judgment that he or she is liable to a plaintiff by reason of the official's conduct.

Perhaps more to the point, plaintiff has not shown that § 270.58(1) does render public officials secure in the knowledge that, without delay or difficulty, they will be shielded from personal monetary loss. In the present case, plaintiff would have me eliminate the issue of defendant Cady's good faith, however "good faith" might be defined. If I were to accede to this contention, the questions of fact affecting good faith would not be resolved in this lawsuit between plaintiff and defendant Cady. If judgment were entered against him in this lawsuit, then in order to obtain the protection of § 270.58(1), defendant Cady would be required to persuade a judge or jury in another forum at another time that he acted in "good faith," within the meaning of § 270.58(1).

██ The plaintiff in this action may not join the state as a defendant, even if he wished to do so. Hans v. Louisiana, 131 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); Forseth v. Sweet, 38 Wis.2d 676, 158 N.W.2d 370 (1967). Assuming that this court is empowered to entertain in this lawsuit a third party action by defendant Cady against the state under § 270.58(1), it would be undertaking in a federal constitutional lawsuit to determine a collateral issue of state law solely for the purpose of determining whether defendant Cady can shift to the state the burden of any judgment which plaintiff might obtain against him. This would be an inappropriate expenditure of the resources of the federal court. But no showing has been made by plaintiff that this court is empowered to entertain such a third-party complaint by defendant Cady against the state. Article IV, Section 27, of the Wisconsin Constitution provides that the legislature "shall direct by law in what manner and in what courts suits may be brought against the state." No legislative act has been cited to support the proposition that defendant Cady may sue the state in this court by means of a third-party complaint for the purpose of enforcing the provisions of § 270.58(1). See Forseth v. Sweet, *supra.*

I conclude that the existence of § 270.-58(1), Wis.Stats., does not justify the elimination from this lawsuit of any affirmative defense of "good faith," however defined, which should otherwise be available to defendant Cady.