**JETSON MANUFACTURING COMPANY and Jack C. Griffith, Plaintiffs,**

**v.**

**Kelly R. MURPHY, John F. Wozniak, Paul C. Mellen, Clarence W. Klinger, Raymond L. Sanders, Stephen J. Hurtak, James T. Rideoute, Prescott A. Berry and Alfred L. Whinston, Defendants.**

**Civ. A. No. 78–131.**

United States District Court, M. D. Pennsylvania.

Dec. 19, 1978.

Charles Rubendall, II, William E. Miller, Jr., Keefer, Wood, Allen & Rahal, Harrisburg, Pa., for plaintiffs.

J. Philip Krajewski, Harrisburg, Pa., Charles S. Stratton, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

HERMAN, District Judge.

This suit involves an action for money damages against various officers and employes of the Internal Revenue Service for alleged violations of Plaintiff's constitutional rights as guaranteed by the Fourth and Fifth Amendments to the United States Constitution. Jurisdiction is based on Section 1331 of Title 28 which confers jurisdiction upon this Court for civil actions where the amount in controversy exceeds ten thousand dollars and arises under the constitution or laws of the United States. Two separate counts are stated in the Plaintiffs' complaint. Count I alleges that an unconstitutional warrantless search and seizure was conducted at Plaintiff Jetson's business premises by Defendants Murphy and Wozniak on April 1, 1974. Count II is against all

the named Defendants and alleges that all of the Defendants conspired to deprive Plaintiffs Jetson and Griffith of their property without due process of law by obstructing or ignoring the continued good faith efforts of Plaintiffs Jetson and Griffith to resolve the controversy with the Internal Revenue Service. Defendants have filed a motion to dismiss and a motion for summary judgment along with supporting affidavits and brief and reply brief. Plaintiffs have filed two responsive briefs and an affidavit of Plaintiff Jack C. Griffith and thus the motions are now ripe for decision. Defendants' motion for summary judgment will be granted for both counts and the action will be dismissed.

FACTUAL SUMMARY

The facts surrounding this controversy, as set forth in the 141 paragraphs of the 25-page complaint, the 15-page affidavit of Jack Griffith, and the affidavits of the Defendants are quite extensive and only the relevant and material ones will be summarized in this memorandum. Plaintiff, Jetson Manufacturing Company (Jetson) is a Pennsylvania business corporation and Plaintiff Griffith has served since its incorporation in 1970 as president and treasurer. The Defendants at all times relevant to this action were employees of the Internal Revenue Service (IRS) and they are being sued in their official capacities and as individuals. The principal business of Plaintiff was the manufacture and assembly of electrical components and the business was located at the Harrisburg International Airport, Middletown, Pennsylvania in premises leased from the Commonwealth of Pennsylvania.

On June 22, 1972 the business premises of Jetson were flooded as a result of Hurricane Agnes and all business and payroll withholding records were destroyed. Using reconstructed records a federal withholding tax return was prepared for filing in December of 1972 that showed the withholding tax due, but included no payment. In August of 1972 Jetson applied for a Small Business Administration (SBA) flood disaster loan in the amount of sixty-five thousand dollars and the loan was initially denied because of the lack of reasonable ability to repay. Subsequently, a SBA loan of $5,000 was granted to Jetson and the remaining amount sought was scheduled for reconsideration.

On or about February 1973, Defendant Wozniak, the IRS officer assigned to the case, brought invoices for the unpaid withholding tax as shown on the December 1972 return to the attention of Jetson's officers. In April 1973 levies were placed in Jetson's business bank account upon tax assessments of approximately $10,000 for failure to make the required federal tax deposits. In July of 1973 the IRS secured a levy and attempted to seize the property of the Plaintiff Jetson, including the accounts receivable. During the course of the seizure, Plaintiff called Congressman Schneebeli who called the IRS office and succeeded in having this first seizure terminated.

The IRS next sent Jetson on September 12, 1973 a communication entitled "Final Notice Before Seizure" and in response to this notice, Jetson's officers again sought the assistance of Congressman Schneebeli. After this notice, Plaintiff Jetson made one $500 payment, however, it did not remit all the taxes due at the time or make subsequent monthly deposits and a levy was again placed on Plaintiff Jetson's business property. Plaintiffs allege that Defendants Wozniak and Murphy, Wozniak's group manager, were unwilling to cooperate in implementing an installment payment schedule for the orderly liquidation of the withholding tax liability in the months following the September notice. A meeting was subsequently held on February 25, 1974 at which time Defendant Murphy renewed previous demands for the immediate payment of the delinquent taxes and Plaintiff Griffith refused. On this refusal, Defendant Murphy allegedly called Plaintiff Griffith an "uncooperative crook".

Then on April 1, 1974 Defendants Wozniak and four other men entered the business premises of the Plaintiffs to seize the property of Jetson and obtain information pertaining to accounts receivable. Prior to any

seizure action, the receptionist was advised of their purpose and she was shown the IRS levy and seizure form. The Jetson receptionist did not open the locked door that entered into the office and work area and the revenue officers removed the pins from the hinges of the inner door and entered the office and work area. Defendant Wozniak then advised Plaintiff Griffith that they were closing the plant. A search of the office area was conducted and approximately 30 work orders were taken by the officers. A padlock was placed on the door when they left. The work orders were returned and approximately three weeks later the seizure was terminated. No warrant, court order, or other document purporting to authorize the search and seizure was ever displayed to Plaintiff Griffith.

Jetson's attempts to have the IRS action of April 1, 1974 rescinded proved unsuccessful. After this the Plaintiffs on or about April 23, 1974 received a notice from the SBA declining Jetson's request for the flood disaster loan for the reasons stated numerous times before, plus the alleged deterioration of its business to the point of padlocking by the IRS for the nonpayment of taxes. Jetson has not been able to return its operation to production after the IRS abandonment of its seizure because of the Commonwealth's subsequent padlocking of the premises for unpaid rent.

Since the levy and seizure did not produce property to satisfy the tax assessment, the IRS assessed a 100% penalty against Plaintiff Griffith, as chief corporate officer on July 16, 1974. In the six months following the notice, Plaintiff Griffith allegedly wrote a series of letters to the IRS requesting an appointment with the District Director which were not answered. His purpose was to discuss and seek an agreement upon a plan for the installment payments of Jetson's outstanding tax liability. A conference, however, was granted and held on March 12, 1975 but no arrangement for payments was arrived at. Throughout the remainder of 1975, 1976 and 1977, Plaintiff Griffith wrote to and enlisted the assistance of Senators Schweiker and Heinz, Congressmen Schneebeli and Ertel and President Ford. Plaintiff Griffith contends that Defendants refused his reasonable requests for interviews and appointments.

## COUNT I

Count I as previously noted concerns the alleged illegal search and seizure conducted at Plaintiff's business on April 1, 1974. Plaintiff Griffith alleges he suffered humiliation before his employees because of the search and has been subjected to mental suffering. Also, it is alleged that the incidents of April 1, 1974 caused the closing of the business premises and is the reason why they remain closed. This count only seeks money damages against Defendants Murphy and Wozniak and not the other Defendants.

In retrospect, it is now known that if the intrusion of April 1, 1974 involved a warrantless search and seizure, the acts of the revenue officers were unconstitutional. The United States Supreme Court held in *G. M. Leasing Corporation v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), that a warrantless entry into a corporation's business office by Internal Revenue Service agents who seized books, records, and other property in partial satisfaction of jeopardy assessments for a federal income tax deficiency to be an intrusion into privacy that violated the Fourth Amendment. Before this decision, however, over a century of legal precedent permitted warrantless searches and seizures by revenue officers. The crucial time for determining the propriety of Defendants' conduct is, of course, the time of the alleged constitutional infringement. At the time of April 1, 1974, the standard practice of the IRS was to interpret 26 U.S.C. § 6331(b), that authorizes "distraint and seizure by any means", as authorizing seizures without a search warrant. Therefore, at the time of the alleged unconstitutional search and seizure, the acts of Defendants were pursuant to statute and in line with the practice of the IRS and the law as it was interpreted at that date.

■ In determining whether liability should be placed upon these two Defendants, their conduct and intentions must be determined as of April 1, 1974. It is the law that officials can reasonably rely upon the validity of standard practice which only subsequently is found to be unconstitutional, *See e. g., Clarke v. Cady*, 358 F.Supp. 1156, 1163 (W.D.Wis.1973); *Rios v. Cessna Finance Corporation*, 488 F.2d 25, 28 (10th Cir. 1973); *Slate v. McFetridge*, 484 F.2d 1169 (7th Cir. 1973). Public officials, in this case IRS officers, are not charged with the obligation of predicting the future course of constitutional law and reliance on a law·or practice believed to be constitutional is per se reasonable conduct.

■ Defendants Murphy and Wozniak are entitled to the defense of qualified immunity for their actions concerning the entry of April 1, 1974. In a *Bivens*[1] type action such as this, the Plaintiffs are not entitled to money damages if the actions of the Defendants are protected by qualified immunity. The qualified immunity test that is applicable in this *Bivens* case is the same as that which applies to section 1983 actions for civil rights violations against state officials. *See, Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bivens v. Six Unknown Federal Narcotics Agents*, 456 F.2d 1339 (2d Cir. 1972). The standard is that "an officer is protected from liability if he acts on a good faith belief that his conduct is not improper, so long as that belief is reasonable." *G. M. Leasing Corporation v. United States*, 560 F.2d 1011, 1015 (10th Cir. 1977); *Bivens*, 456 F.2d at 1348; *Mark v. Groff*, 521 F.2d 1376, 1380 (9th Cir. 1975). Under the facts of the present case it is clear that the Defendants had a good faith belief that the entry of the Plaintiff's business premises was not improper, and their action was reasonable as it was the standard practice of the IRS and proper under the law at that time.

■ Defendants Murphy and Wozniak have both filed affidavits stating that at all times they acted in good faith and under the belief that their activities were proper and necessary in carrying out their official duties. Plaintiff Griffith tries to refute this by stating that these two men were uncooperative in resolving the tax liability and refers to some incidents that could show that the relationship between the parties was not very congenial. The affidavits of the Defendants that they acted in the good faith belief that their conduct was not improper, however, remains uncontroverted. Under such circumstances summary judgment is appropriate for the Defendants. *See, Pilla v. Alexander*, 558 F.2d 509 (8th Cir. 1977). The United States Supreme Court has recently stated that "damage suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity. See 416 U.S. at 250, 94 S.Ct. at 1693. In responding to such a motion, plaintiffs may not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will insure that federal officials are not harassed by frivolous lawsuits" *Butz v. Economou*, —— U.S. ——, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895, 917 (1978) *citing Scheuer v. Rhodes*, 416 U.S. 232, 250, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In sum, these two factors, the uncontroverted affidavits of good faith belief that their actions of April 1, 1974 were lawful, and that the constitutional right alleged to be violated was not clearly established at the time, point to the conclusion that qualified immunity should apply and that the Defendants should not be held liable in damages for their reasonable actions. *See, Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Norton v. Turner*, 427 F.Supp. 138 (E.D.Va.1977); *G. M. Leasing Corporation v. United States*, 560 F.2d 1011 (10th Cir. 1977); *Pilla v. Alexander*, 558 F.2d 509 (8th Cir. 1977).

■ Defendants also assert the defense that Count I is barred by the applicable Pennsylvania statute of limitations. The

1. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

warrantless search and seizure took place on April 1, 1974 and suit was not filed until February 14, 1978. This presents the question, which Pennsylvania statute of limitation is applicable to the intrusion in issue or alternatively which tort recognized in Pennsylvania is the most similar to the acts alleged. The standard for assessing the similarity of the various state law torts to the federal claim presented requires analysis of three factors: "(1) the defendant's conduct, (2) the plaintiff's injury, and (3) the relief requested." *Myers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894 (3d Cir. 1977). Using these three factors, it is evident that Plaintiff's action is most analogous to the interests protected by the tort of invasion of privacy which has been held to fall within the two year Pennsylvania statute of limitations. 12 P.S. § 34; *Hull v. Curtis Publishing Co.*, 182 Pa.Super. 86, 125 A.2d 644 (1956).

■ The *Bivens* action for a warrantless entry protects the plaintiff from an invasion of privacy. Particularly, in *G. M. Leasing Corporation v. United States*, 429 U.S. at 351–59, 97 S.Ct. at 631, the court was concerned with the *intrusions into privacy* of the corporate plaintiff as it stated:

"We therefore decline to read [Section 6331] as giving carte blanche for warrantless invasions of privacy. Rather, we give it its natural reading, namely, as an authorization for all forms of *seizure*, but as silent on the subject of intrusions into privacy."

*See also, Ingraham v. Wright*, 430 U.S. 651, 696, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). In applying the *Meyers'* test, the Defendant's conduct was an intrusion into the privacy of the Plaintiffs. The Plaintiffs allege injury in the complaint of humiliation and mental suffering and they request relief of money damages. Therefore it appears that the interest invaded and the harm caused is most similar to an invasion of privacy tort which has a two-year statute of limitations. In *Ammlung v. Chester*, 494 F.2d 811 (3d Cir. 1974), allegations of illegal search and seizure were found to fall within the two-year statute of limitations and in *Funk v.*

*Cable*, 251 F.Supp. 598 (M.D.Pa.1966), the two-year period was applied to an invasion of privacy. See also, *Conard v. Stitzel*, 225 F.Supp. 244 (E.D.Pa.1963); *MacMurry v. Board of Trustees of Bloomsburg State College*, 428 F.Supp. 1171 (M.D.Pa.1977). Therefore, the two-year statute of limitations, 12 P.S. § 34, is applicable and the Plaintiff's action is also barred to Count I for failure to file suit within the period allowed by state law.

## COUNT II

■ Plaintiffs in Count II allege a civil conspiracy among all Defendants to deprive them of their property without due process of law by obstructing or ignoring their continued good faith efforts to resolve a controversy with the IRS concerning the unpaid withholding taxes. They further allege that Defendants denied them appropriate relief by not permitting the installment liquidation of the outstanding tax liability. Defendants should be granted summary judgment on this count for a number of reasons they raise in their brief, however, it is sufficient to rely on the fact that the complaint fails to state a cause of action upon which relief may be granted. Simply the complaint fails to state any claim that can properly be construed as a violation of the Fifth Amendment.

*Bivens* actions do not cover all common law torts and for it to be applicable a complaint must state a cause of action of constitutional magnitude. Also, a civil conspiracy is alleged but no facts of a conspiracy are stated as no facts of combination, planning, or plotting to do an unlawful act are pleaded. The complaint does not even sound in conspiracy and Count II has no basis in the facts as pleaded. It therefore fails to state a cognizable claim. *See, Ammlung v. Chester*, 494 F.2d 811 (3d Cir. 1974); *Regan v. Sullivan*, 557 F.2d 300 (2d Cir. 1977).

■ Fifth Amendment violations have been recognized as giving rise to a cause of action for damages caused by the violations of the constitutionally protected interest. *Bethea v. Reid*, 445 F.2d 1163 (3d Cir. 1971);

*Moore v. Koelzer*, 457 F.2d 892 (3d Cir. 1972). But these decisions rest on specific alleged violations of the Fifth Amendment. *See e. g., States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146 (4th Cir. 1974); *Moore v. Koelzer*, 457 F.2d 892 (3d Cir. 1972). In the instant action, Plaintiffs identify absolutely no violation of the Fifth Amendment, but instead merely state vague and conclusory allegations.

The Plaintiffs had no constitutional right to avoid paying a federal tax liability, and no right to an extension of time for payment. They were provided appropriate notices of the delinquencies, and the property of Jetson was properly subject to levy and seizure. Finally, they had no constitutional right to either negotiate with the IRS nor any right for installment liquidation of its outstanding tax liability. Clearly no violation of the Fifth Amendment is stated and Count II is frivolous on its face. Therefore, Count II of the complaint must be dismissed for the failure to state a compensable claim for relief under the Federal Constitution. The essence of Count II is an attempt to sue the Defendants because they refuse to cease collection activity against the Plaintiffs, which was their duty under law, and this will not be allowed.

An appropriate order will be entered.